# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
April 9, 2013 Session

## LISA GAIL HAYES v. MARK C. PIERRET

**Appeal from the Chancery Court for Williamson County**
**No. 32262      Donald P. Harris, Judge**

**No. M2012-00195-COA-R3-CV - Filed June 27, 2013**

In these acrimonious post-divorce proceedings, the father of two minor children filed a petition seeking, *inter alia*, to be given sole decision-making authority over the children's educations, non-emergency health care, religion, and extracurricular activities, and to be designated the primary residential parent or alternatively to receive more parenting time. The trial court found a material change of circumstances had occurred due to the parties' total inability to cooperatively co-parent and that it was in the children's best interest to spend more quality time with their father. However, the court found it was in the children's best interest for the mother to remain the primary residential parent and to have final authority over the children's non-emergency medical care after consultation with the father. The court found that the other major decisions concerning the children should be made jointly. Each party was ordered to pay his or her own attorney's fees. We affirm the foregoing decisions; however, we have determined the father may be entitled to a modification of his child support obligation, which was not addressed in the trial court's final order, and we remand this issue for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Dana C. McLendon, III, Franklin, Tennessee, for the appellant, Mark C. Pierret.

Stephen Walker Pate, Murfreesboro, Tennessee, for the appellee, Lisa Gail Hayes.

**OPINION**

Lisa G. Hayes ("Mother") and Mark C. Pierret ("Father") are the parents of two minor children – Ethan, born August of 1998, and Claire, born September of 2002. Both parties are highly educated and have successful careers. Mother earned a bachelor's degree in engineering from Vanderbilt University, and currently works as a marketing manager for Vanderbilt University Medical Center. Father holds a bachelor's degree in computer science from the University of Louisiana and a master's degree in business administration from the University of Tennessee. He works as a senior analytics manager for Avaya, an international business telecommunications company. Father works from home; Mother has an office at Vanderbilt University Medical Center, but she has a flexible work schedule.

The parties were granted a divorce on February 13, 2007, after approximately eight years of marriage. Pursuant to the parties' 2007 Marital Dissolution Agreement and Agreed Permanent Parenting Plan, Mother was designated the primary residential parent. Father was granted 114 days of visitation per year, to be exercised every other weekend and Thursday nights during the school year, alternating weeks in the summer, Father's birthday, and Father's Day. The parties alternated visitation on the remaining holidays. As the 2007 parenting plan provides, the parties agreed Father would pay $2,035 per month in child support, which included considerable "additional expenses" for the cost of a daytime nanny for the younger child, Claire. The parenting plan further provided that child support "will be recalculated" after 2008, when Claire was expected to begin attending Grassland Elementary School. Shortly after the divorce, both parents purchased homes in the same subdivision to ensure the children would be close to their schools, friends, and various extracurricular activities, regardless of which parent the children were with.

Despite what seemed to be favorable circumstances for recently divorced parents of two young children, Mother and Father began exhibiting hostility toward one another immediately after the divorce. They engaged in drawn-out and heated disagreements over everything from whether they could park in one another's driveways when picking up and returning the children to whether their daughter should undergo major surgery. To make things worse, they frequently put their children in the middle of their arguments, against the advice of two court-ordered parenting coordinators, two forensic psychiatrists, and a veritable army of counselors, psychologists and other mental health professionals. Moreover, they involved other family members in their disputes, as well as their children's nannies, teachers, and doctors.

We shall not repeat the parties' hateful and frequently hypocritical accusations in detail nor shall we identify the numerous petitions, motions, and responses filed by the parties in the short time during which they have been divorced. We limit our summary to the facts and procedural history that are relevant to the issues on appeal, which are as follows.

On July 17, 2009, Father filed a Petition for Change of Custody and/or Residential Parenting Schedule in the Williamson County Chancery Court, alleging there had been a substantial and material change of circumstances which required a modification to the parties' Agreed Permanent Parenting Plan, and that it was in the children's best interests for Father to be the primary residential parent and to have final decision-making authority over the children's educations, non-emergency healthcare, religion, and extracurricular activities. Mother filed an answer denying Father's allegations. Father filed an Amended Petition on March 8, 2010, alleging additional facts in support of his Petition, and Mother filed another answer again denying Father's allegations.

On March 29, 2010, Father filed a "Motion for Protection of Children and Relief," requesting, *inter alia*, a modification in his child support obligation. The trial court reserved the child support issue, stating:

> [T]he Court shall not address that issue at this time, but will allow the Father to renew the child support issue if mediation fails in this cause; however, the Court at [this] time again will inquire as to why that issue cannot be heard at the final hearing . . . since it has been an issue since the initial filings in this cause.

Subsequently, on February 16, 2011, the parties entered an Agreed Order reducing Father's child support to $1,504 per month, due to the fact that, as expected, the children were both attending school and Mother's childcare expenses had been reduced from $1,639 per month at the time of the divorce in 2007, to $782 per month in 2011. The Agreed Order further provides that the reduction is based solely on the childcare expenses and was entered "without prejudice to the claims or defenses either party may raise at trial . . . ."

The Amended Petition for Change of Custody and/or Residential Parenting Schedule was tried before Senior Judge Donald P. Harris on August 30 and October 21, 2011. Both parties testified, as did Mother's Parents, Father's brother, Mother's next-door neighbor, Mother's direct supervisor at Vanderbilt, and a former nanny. In lieu of calling the parties' son Ethan to testify, the parties stipulated as to his preference to reside with Mother. The parties also submitted a number of exhibits at trial, including a Forensic Parenting Time Evaluation conducted at Vanderbilt Medical Center, a 296-page report from the parties' first

Parenting Coordinator, several photos, and hundreds of pages of emails between the parties and various mental health professionals.

In a detailed Memorandum entered on October 31, 2011, the trial court found, *inter alia*, the preponderance of the evidence showed that a material change of circumstances had occurred, as required by Tennessee Code Annotated § 36-6-101(a)(2)(C) for the modification of a prior order pertaining to a residential parenting schedule. Specifically, the court found, "Mother has systematically endeavored to destroy the relationship between the Father and the parties' minor children," and that "Mother's view of Father is so biased that her credibility has been damaged in the mind of the court."

Having found a material change of circumstances, the trial court then considered the factors in Tennessee Code Annotated § 36-6-106(a) to determine the best interest of the children. The court concluded several of the factors were equally favorable to both parties: both parents loved the children, were excellent providers, lived in stable homes, and were mentally and physically healthy. As for the "love, affection and emotional ties existing between the parents and the child[ren]," *see id.* at -106(a)(1), the court found the children were closer to Mother, but that Mother's conduct towards Father is "harmful to [the] children;" and that while Father "has engaged in conduct that exacerbates the poor relationship between the parties," Father "seems more willing to correct his mistakes and work toward a relationship with . . . Mother for the benefit of their minor children." For the same reason, the court found factor 10 favored Father: "Each parent's . . . past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents . . . ." *Id.* at -106(a)(10). The trial court also found factor 8, "evidence of physical or emotional abuse to the child, to the other parent or to any other person," favors Father because, "Mother's conduct toward and statements made about the Father . . . have aggravated the anxiety disorder suffered by the minor son."*Id.* at -106(a)(8).

The foregoing notwithstanding, the trial court found the children were closer to Mother because she was a stay-at-home mother for many years prior to the divorce, she has been the children's primary care giver for their entire lives, and because the children have performed well in school since the divorce with Mother as the primary residential parent. Based upon these findings, the court determined that the "home, school, and community record of the child" factor, *id.* at -106(a)(6), "favors . . . Mother continuing to be the primary residential parent," and that factor 3, "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment," *id.* at -106(a)(3), "strongly favors the Mother."

After weighing all of the factors, the trial court found factor 3, "the continuity factor," to be the most important in determining the children's best interest in this case. Thus, the court concluded it was in the children's best interest for Mother to remain the primary residential parent, but for Father to receive additional parenting time with fewer interruptions from Mother,[1] to allow Father "the opportunity to develop a closer relationship with the minor children." In modifying the parenting plan, the trial court adopted many of the suggestions from the Forensic Parenting Time Evaluation; for example, the new plan provides that during the school year, Father will continue to keep the children every other weekend, but that on Thursday nights Father will only keep one child at a time. As for summer vacation, Father was given the first twenty one days of June and July, except the second weekends of each month, and the first ten days of August. Father was also given the second half of the children's Christmas vacation each year, beginning at noon on December 26 and ending when school resumes in January. Although Father was granted approximately three additional weeks of parenting time, the court did not address whether Father's child support obligation should be modified.

The court further found it was in the children's best interest for Mother to have final decision-making authority over the children's non-emergency medical decisions, after consultation with Father. Decisions concerning the children's educations, religion, and extracurricular activities remain joint under the new parenting plan.

The Order effecting these changes to the parties' parenting plan, which additionally incorporated the October 31, 2011 Memorandum, was entered on December 20, 2011. This appeal by Father followed.

Father presents several issues on appeal. He contends the trial court failed to properly consider the children's best interests under the relevant factors in Tennessee Code Annotated § 36-6-106(a) and, as a result, the court erred by not designating Father as the primary residential parent and by granting Mother sole decision-making authority for non-emergency health care decisions. He also contends the trial court erred by not modifying his child support obligation and by not making the modification retroactive to 2008. For his final issue he contends the court erred by not awarding him his attorney's fees at trial. We shall discuss each issue in turn.

---

[1]The new plan additionally required Mother to limit her phone calls to the children to twice per week during Father's parenting time.

## ANALYSIS

## I. MODIFICATION OF PARENTING PLAN

### A. STANDARD OF REVIEW

When a petition to modify a parenting plan is presented, the threshold issue is whether there has been a material change in circumstances since the plan went into effect. *See* Tenn. Code Ann. § 36-6-101(a)(2)(C); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). If the trial court finds a material change of circumstances has occurred, the trial court must then determine whether the requested modifications to the parenting plan are in the best interest of the children, in accordance with Tennessee Code Annotated § 36-6-106(a). Neither party takes issue with the trial court's finding of a material change of circumstances; therefore, the only issues before this court concern the trial court's analysis of the children's best interest and the resulting parenting plan.

Trial courts have wide discretion in determining a child's best interest regarding custody or visitation. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). It is not the role of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). Appellate courts are reluctant to second-guess a trial court's decision concerning parenting plans and schedules, and we will set aside such a decision only when the decision "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88. This is because such decisions often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). We review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 670.

### B. PRIMARY RESIDENTIAL PARENT

Father contends the trial court's finding that it was in the children's best interest for Mother to remain as the primary residential parent constitutes an abuse of discretion because the decision rewards Mother for her bad behavior. We respectfully disagree.

A decision regarding the children's best interest should be designed to "promote children's best interests by placing them in an environment that will best serve their physical and emotional needs." *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983). Parenting decisions should not be intended or designed "to reward parents for prior virtuous conduct, nor to

punish them for their human frailties or past missteps." *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006). Always, the best interest of the child is paramount.

It is clear from the October 2011 Memorandum and December 2011 Order that the trial court seriously considered Father's concerns that Mother's behavior toward Father, and the defamatory comments she makes about Father, are harmful to the children and to their relationship with Father. The trial court did not "reward" Mother for her bad behavior; instead the court criticized Mother's behavior, awarded Father additional parenting time, and restricted Mother's communications with the children during Father's parenting time. The evidence fully supports the trial court's findings that Mother has always been the children's primary caregiver, that Mother has done an excellent job fulfilling the caregiver role throughout the children's lives, and that continuity in the children's lives is extremely important in this case. We recognize, as the trial court did, that Mother needs to change her ways in many respects; in this case, the simple truth is the trial court was faced with a difficult choice in designating a primary residential parent. Each parent has many admirable traits but their animosity toward each other and their failure to compromise on important – and unimportant – parenting decisions has undermined the quality of their parenting. Based on the record before us, we have concluded that the trial court acted within its discretion, keeping the children's best interest at the forefront of its analysis, by retaining Mother as the primary residential parent.

## C. DECISION-MAKING AUTHORITY

We also find no error with the trial court's decision to grant Mother final decision-making authority regarding the children's non-emergency medical care, after consultation with Father. Tennessee Code Annotated § 36-6-407(b) provides that the court "shall order sole decision-making to one (1) parent when it finds that: . . . both parents are opposed to mutual decision making." Subsection (c) further provides that in allocating decision-making authority, the court "shall consider . . . the history of participation of each parent in decision making . . . [and w]hether the parents have demonstrated the ability and desire to cooperate with one another in decision making regarding the child in each of the following areas: physical care, . . . health." The proof in the record demonstrates the parties have failed miserably at joint decision-making regarding the children's medical care since the divorce and both parties agree (ironically) that final authority on this issue should be vested in one parent. Mother is the primary residential parent and the children's lifelong primary caregiver. Moreover, the children are both healthy and well cared for. Thus, we find no error with this decision.

## II. CHILD SUPPORT

Father raises two primary issues on appeal concerning his child support obligation. First, Father contends that he is entitled to a retroactive reduction back to August 2008, when Claire started attending elementary school and when, he asserts, Mother's childcare expenses were first reduced.[2] Second, Father contends he is entitled to an additional reduction beginning with the implementation of the new parenting schedule in November 2011. He further states that the trial court's failure to address these child support issues in its October 2011 Memorandum and its December 2011 Order constituted error.

### A. RETROACTIVE MODIFICATION OF CHILD SUPPORT

We begin our analysis by recognizing that Father did not seek a modification of his child support in 2008 when Claire started school, or in his July 2009 Petition for Change of Custody and/or Residential Parenting Schedule, or in his March 2010 Amended Petition for Change of Custody and/or Residential Parenting Schedule. The first time Father filed a written request for a modification of his child support obligation during these proceedings was March 29, 2010, when he filed the Motion for Protection of Children and Relief.[3]

Tennessee Code Annotated § 36-5-101(f)(1) provides that an order for the payment of child support "shall be entitled to be enforced as any other judgment of a court of this state," and "*shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed . . . .*" (emphasis added). Thus, "a court has no power to alter a child support award as to any period of time occurring prior to the date on which an obligee spouse files his or her petition." *Alexander v. Alexander*, 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000); *see also Rutledge v. Barrett*, 802 S.W.2d 604, 606 (Tenn. 1991).

---

[2] While the primary basis for the retroactive reduction is the lowering of Mother's childcare expenses, Father also contends his income was lower and Mother's was significantly higher from 2008-2011 than at the time of the divorce in 2007. Because the record does not contain Child Support Worksheets showing the parties' true income and expenses during this time and because we have determined the child support issues must be remanded for further proceedings, it is unnecessary to address Father's specific arguments for a retroactive reduction in this opinion.

[3] Father asserts he filed a petition to modify his child support obligation prior to the July 17, 2009 Petition for Change of Custody and/or Residential Parenting Schedule. However, Father admits he voluntarily withdrew the previously-filed petition when Mother stated she would have to take the children out of their extracurricular activities if Father's support obligation was reduced. Thus, this matter proceeded on Father's July 17, 2009 Petition for Change of Custody and/or Residential Parenting Schedule, and Father's Amended Petition for Change of Custody and/or Residential Parenting Schedule, neither of which requested a modification of child support.

Pursuant to the foregoing authority, and specifically Tennessee Code Annotated § 36-5-101(f)(1), because Father did not request a modification of child support until March 29, 2010, when he filed the Motion for Protection of Children and Relief, Father is not entitled to a retroactive modification of child support at anytime prior to March 29, 2010, if then.

Furthermore, Father is not entitled to a modification on or after March 29, 2010, unless he can establish that a significant variance exists. *See* Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(a) (stating that with the exception of a modification to provide for a child's healthcare needs "[u]nless a significant variance exists, . . . a child support order is not eligible for modification . . . ."). For child support orders established under the income shares model, such as the one at issue in this case, a significant variance is defined as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order . . . ." *Id.* at -.05(2)(c).

From February 2007 through February 2011, Father paid $2,035 per month in child support, as required by the original parenting plan. Father began paying $1,504 per month in March 2011, pursuant to an Agreed Order establishing that the cost of Mother's work-related childcare had gone down substantially since the time of the divorce.[4] The record before us, however, does not provide all of the requisite evidence necessary for this court to determine whether a significant variance existed as of March 29, 1010. Because we are not in a position to determine whether Father is entitled to a retroactive modification of child support as of or after March 29, 2010, and if so, in what amount, we remand the issue for the trial court to make the requisite determinations.

### B. MODIFICATION BASED ON THE 2011 MODIFIED PARENTING SCHEDULE

Father asserts that he is entitled to a modification of his child support obligation based upon the 2011 modified parenting plan for the following reasons: 1) Father's present annual salary at Avaya is $118,000, which is about $10,000 less per year than he was making at the time of the entry of the 2007 parenting plan; 2) Mother's salary at Vanderbilt is now, "$100,000 and some change," which is significantly more than she was making in 2007,[5] and 3) Pursuant to its August 2011 Memorandum and October 2011 Order that followed, the trial

---

[4]Mother stipulated her childcare expenses were reduced from $1,639 per month at the time of the divorce to $782 per month in 2011.

[5]The 2007 parenting plan provides that Mother's gross monthly salary was $6,333.00, or about $76,000 per year.

court modified the 2007 parenting schedule by granting Father approximately three additional weeks of parenting time.

A child support order may be modified to reflect "a parenting time adjustment, and work-related childcare only upon compliance with the significant variance requirement specified in 1240-2-4-.05." Tenn. Comp. R. & Regs. 1240-2-4-.05(6). As stated above, a significant variance is defined as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order . . . ." *Id.* at -.05(2)(c). Therefore, "[u]pon a demonstration of a significant variance, the tribunal shall increase or decrease the support order as appropriate in accordance with these Guidelines . . . ." Tenn. Comp. R. & Regs. 1240-2-4-.05(5).

The modification of the parenting schedule may trigger a modification of Father's child support obligation, *see e.g., Schreue v. Garner*, No. M2010-00369-COA-R3-CV, 2011 WL 2464180, at *6 (Tenn. Ct. App. June 20, 2011) (holding that, "since we have affirmed the modification of the residential parenting schedule, there was no error in the trial court recalculating child support based on the new plan."); however, the record does not contain a current child support worksheet showing the amount Father's obligation would be according to the Child Support Guidelines, using the modified parenting schedule and the parties' current income and expenses, effective the date the parenting schedule was modified. *See* Tenn. Comp. R. & Regs. 1240-2-4-.05(3) ("To determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using current evidence of the parties' circumstances."). Likewise, there are no worksheets in the record establishing whether a significant variance existed prior to the entry of the February 2011 Agreed Order. Therefore, we also remand for the trial court's consideration whether Father is entitled to a modification of his child support obligation as a consequence of the modified parenting schedule.

### III. ATTORNEY'S FEES

Father asked to be awarded his attorney's fees in the trial court. He relied on a provision of the parties' Marital Dissolution Agreement from 2007 which provides: "In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, the prevailing party shall be entitled to a judgment for his or her expenses, including reasonable attorneys' fees, incurred in prosecuting or defending this action."[6]

---

[6]Father does not rely on Tennessee Code Annotated § 36-5-103(c), which vests in the court the
(continued...)

We review the trial court's decision to deny such a request under the abuse of discretion standard. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

Father partially prevailed on his Petition for Change of Custody and/or Residential Parenting Schedule. He received additional parenting time, and Mother has been restricted to two phone calls per week during Father's parenting time. Mother was also required to pay the court costs in the trial court. However, Father did not receive the main relief he sought, that is, to be named the children's primary residential parent. Mother prevailed on that issue, and was also granted sole decision-making authority regarding the children's non-emergency medical decisions. Under these circumstances, we are unable to conclude that the trial court abused its discretion in denying Father's request to recover his attorney's fees at trial. Thus, we affirm the trial court's decision to not award Father his attorney's fees incurred in the trial court.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects except for certain issues pertaining to Father's claims to modify child support, which issues are remanded for further proceedings. Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[6](...continued)
discretionary authority to award attorney's fees and costs in "any action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties."